DETERMINED IN

# THE SUPREME COURT

OF THE

## TERRITORY OF ARIZONA,

### JANUARY TERM, 1880.

---

### D. K. HOUGHTALING, RESPONDENT, v. N. ELLIS ET AL., APPELLANTS.

REFORMATION OF CONTRACT ON WHICH SUIT IS BROUGHT may be properly asked for in the answer thereto, if the suit is an original proceeding in equity.

TWO SYSTEMS OF LAW AND EQUITY CAN NOT BE BLENDED in the same action or proceeding in the federal constitutional courts. The equity jurisdiction of those courts is derived solely from the constitution of the United States and the acts of congress, and is the same in every state.

COURTS OF TERRITORIES ARE NOT UNITED STATES CONSTITUTIONAL COURTS, but United States territorial courts, acting under the statutes of their respective territories.

EQUITABLE DEFENSE TO ACTION AT LAW CAN BE AUTHORIZED by territorial statutes, and has been so authorized by the statutes of the territory of Arizona.

APPEAL from the district court of the third judicial district, county of Yavapai. The action was an action at law brought by the plaintiff against the defendants, on a written contract for the payment of money. The defendants, in

their answer, set up new matter of an equitable nature as a defense to said action. Plaintiff demurred to the answer, on the ground that the facts therein set up constituted a bill in equity seeking affirmative relief, and could not be pleaded by way of defense to this action. The court below sustained the demurrer and gave judgment for the plaintiff, and the defendants appealed to this court.

*Clark Churchill,* for the appellants.

*Rush* and *Wells,* for the respondents.

By Court, FRENCH, C. J.:

In the argument of this case it was assumed that the question was raised in this record whether in this territory an equitable defense can be interposed to a complaint setting forth an action at law, and especially whether the defendant pleading such equitable defense can properly ask that the contract on which the legal action is founded be reformed in such action. There is no doubt that a reformation of the contract on which the action is brought may be properly asked for in the answer in such action, if the action be an original proceeding in equity. This may be done even in an action for the specific performance of such contract. The matter entitling a party to amendment of his contract may be set up by way of defense to a proceeding for a specific performance of it. *Woodworth* v. *Cook,* 2 Blatchf. 151.

As to the federal constitutional courts, the rule and practice is well established that the two systems of law and equity can not be blended in the same action or proceeding. The equity jurisdiction of the purely federal courts is derived solely from the constitution and acts of congress. The equitable jurisdiction of these courts is the same in every state, and the rule of decision is precisely the same in all. Their rule of practice is not regulated or even modified by the state practice. *Dodge* v. *Woolsey,* 18 How. 347; *United States* v. *Howland & Allen,* 4 Wheat. 108; S. C., 4 Curt. 360. A great many cases to the same effect are found in the United States supreme court decisions, and none *contra.* The supreme court goes further still; in the case of *Jones et al.* v. *Howard,* 20 How. 22, the court say:

"It must be remembered that this is a suit at law to recover the possession of the land in dispute; and that although it may be the course of practice in the courts of the state of Texas in a suit of this description to blend in the proceeding the principles of law and equity, in the federal courts sitting in the state the two systems must be kept distinct and separate. This principle is fundamental in these courts, and can not be departed from. The court, therefore, in a suit at law, should exclude the hearing and determination of all questions that belong appropriately and exclusively to the jurisdiction of a court of equity. In a case calling for the interposition of this court, and turning upon equitable considerations, relief should be sought by bill in equity." The doctrine is here clearly announced that if a party seek equitable remedy or relief, he must do it by original bill, and not in answer to an action at law. In the United States federal courts, state statutes and practice have no application.

This doctrine and practice, so uniformly announced and maintained in all the United States federal courts, has no doubt tinged the decisions of the territorial courts in some instances.

But the courts of the territories are not United States constitutional courts, but United States territorial courts acting under the statutes of their respective territories; and the question in the case at bar is whether an equitable defense to an action at law can be authorized by territorial statutes, and if so, whether it has been so authorized by territorial enactments in Arizona.

I am of the opinion that both these questions may be answered in the affirmative. Two cases in the supreme court of Montana are cited by the respondent. But these cases do not reach the case at bar. In the summing up of the doctrine of these two cases, in the latter case, in divisions numbered 1, 2, 3, 4, and 5, on page 540, the concluding number 5 reads as follows: "That suits in equity, where equitable relief is prayed, *or where an equitable defense is set up to a claim at law*, must be tried as in a court of chancery, and the decree emanate from the judge sitting as a chancellor." This is precisely what is prayed for by the defendants in this case.

I am of the opinion that the answer in this case is a full bill in equity in substance, and not justly subject to the objection of not containing facts sufficient to constitute a defense; if doubt be entertained as to the equitable matter solely, it sets up the legal matter, not by denial, it is true, but by averment, and facts stated, such as that the consideration failed, which constitute a good defense at law. I am therefore of the opinion that the judgment should be reversed and the case remanded for further proceedings, and that the demurrer to the answer be overruled, and it is so ordered.

PORTER, J., concurred.

SILENT, J., dissented.

After the rendition of the foregoing opinion, a rehearing was granted, upon which counsel for appellants presented the following points:

1. The answer interposes two defenses to the complaint, viz. : 1. A failure of consideration, which would be a good defense at law; 2. Facts showing that the alleged contract had never been entered into by defendants; but, by the mutual mistake of all parties, the paper set out in the complaint failed to express the contract which was really made, and thus constituting an equitable defense.

2. The answer alleges that "the enforcement of any contract by the plaintiff against the defendants herein, or either of them, such as the said plaintiff in and by his said complaint herein asserts, claims, and avers, is evidenced by the said memorandum or writing in said complaint set out, would be a fraud in fact and in law upon said defendants, and each of them, and would in effect foist upon and compel them to perform a contract which they, or either of them, never entered into, made, or assented to in any manner, and for which they did not, nor did either of them, ever have or receive any consideration whatever." The whole difficulty seems to arise out of a confusion, in the minds of counsel for respondent and the court below, of the contract with the evidence of it; the agreement which was really made and the writing which it is claimed by the plaintiff contains the evidence of the agreement. While the answer

admits the signing of the writing, it denies that the writing correctly states the contract; and by the answer the defendants do not seek a change of the contract, but they ask the court to assert against them the contract which they really made, not one which they did not make.

3. The legislature has by statute provided that "there shall be in this territory but one form of civil action for the enforcement or protection of private rights and the redress or prevention of private wrongs." Comp. Laws, p. 409, sec. 2437. And this statute is in precisely the same words as section 1 of the civil practice act of California and of section 69 of the New York code. The supreme court of California have uniformly held that, under this statute, in the form of the remedy, no distinction exists between legal and equitable rights; although the general principles which govern the case remain unchanged. *Jones* v. *Steamship Cortes,* 17 Cal. 498; *Lubert* v. *Chauviteau,* 3 Id. 463; *Wiggins* v. *McDonald,* 18 Id. 127; *Payne* v. *Treadwell,* 16 Id. 243; *Cordier* v. *Schloss,* 12 Id. 147. The effect of this section of our statute is to authorize our courts to grant relief under both legal and equitable principles in the same action. The courts no longer recognize the distinction which formerly existed in a declaration at law and a bill in a suit in equity. The complaining party in each case files his complaint containing a statement of the "facts constituting the cause of action in ordinary and concise language." Comp. Laws, p. 414, sec. 2475. And the court will grant such relief upon such complaint as the plaintiff may be entitled to, without regard to whether the rules of law or principles of equity, or both, are to be invoked. It often happens, in fact, that the courts grant both legal and equitable relief in the same action. To do otherwise would be to utterly disregard the statutes. *More* v. *Massini,* 32 Cal. 595; *Gates* v. *Kief,* 7 Id. 125; *Rollins* v.*Forbes,* 10 Id. 299; *Marius* v. *Bicknell,* Id. 217; *Truebody* v. *Jacobson,* 2 Id. 269.

This position being once established, the criticism of the learned counsel for respondents, upon the opinion of the majority of this court, is fully answered. In fact, this criticism is entirely without foundation. An examination of the report of the case referred to, *Woolman* v. *Garringer,* 1 Mont. 540, will disclose the circumstance that the supreme court

of Montana held that the legislature of that territory, under the organic act thereof, had no power to blend the two jurisdictions in so far as to grant the plaintiff equitable and legal relief in the same proceeding; but notwithstanding this, that court made use of the language quoted by Mr. Chief Justice French in his opinion in this case.

4. But it is contended, in behalf of the respondent, that our statute, while giving this broad scope to the jurisdiction of our courts, and removing the partition walls between their jurisdiction at law and in equity proceedings, has still fettered them by other statutes in such a manner that they must still maintain the old, obsolete fictions, and confine themselves within other limits than those prescribed by the principles of law and equity which are invoked by the facts of the case before them; and section 46 of our practice act is cited in support of this position. This section reads as follows: "The answer of the defendant shall contain: 1. In respect to each allegation of the complaint controverted by the defendant, a specific denial thereof, or a denial thereof according to his information and belief, or any knowledge sufficient to form a belief; 2. A statement of any new matter constituting a defense or counter-claim, in ordinary and concise language."

What is there in this language to change this rule? The answer may contain: 1. A denial; 2. A statement of any matter constituting a defense. In the case at bar, as already shown, the answer contains both these defenses. The law defining "counter-claims" has nothing to do with the subject under consideration. Our statute allows a counter-claim; but it also allows, entirely independent of that, any "new matter constituting a defense," whether it be such matter as comes within the definition of a counter-claim or not.

5. To the point made by respondents' counsel that the plaintiff, upon the trial of the issues tendered by the answer, would have to rely upon a simple denial, I have to say: 1. This is not correct. Section 2501, p. 418, Comp. Laws, provides: "The allegation of new matter in the answer shall be deemed controverted by the adverse party, as upon a direct denial or avoidance, as the case may require." Under this statute the plaintiff would be permitted to give

any evidence, either in denial or avoidance of the new matter in the answer. 2. Even though it were true, that would not change the law with reference to defendants' right to plead the new matter. 3. I can not conceive of a case where a court of equity, under such circumstances, would be unable to fully protect a plaintiff from any and all the dire consequences depicted by respondents' counsel.

6. I therefore respectfully submit that the judgment of this court, reversing the judgment of the court below, should not be changed.

And counsel for respondents presented the following points: It seems to us that the new matter set up in and constituting defendants' answer is in no way or in any legal sense a defense to plaintiff's action. It nowhere denies or puts in issue any allegation of plaintiff's complaint, nor does it pretend to confess and avoid; neither is the matter in any way in bar of plaintiff's action. The term "defense" is essentially negative, and not affirmative. Pomeroy, treating of the term "defense," says: "The facts from which the defensive right arises may, perhaps, in a proper occasion, and when employed for that purpose, be made the basis for affirmative relief; but when so employed, they would not be a defense. In short, a defense is not to be conceived of as the means of acquiring positive relief, or any remedy, legal or equitable." Pomeroy's Remedies and Remedial Rights, sec. 88.

To entitle a defendant to plead or set up new matter in his answer, it must constitute a *defense*, or a counter-claim. Now, with this definition of the term "defense" (and we think it accords with the legal definition from time immemorial), we can not see how the matter set up in defendants' answer can be construed to fall within its terms. The answer, instead of being negative in its character, is essentially affirmative in every particular. The gist of the answer is, that certain words by mistake were omitted from the writing, and it asks that the writing be reformed by inserting those words. Suppose the relief sought by defendants were granted. What then? The plaintiff's right of action is founded upon the contract. Would the relief, when granted, be a bar to the plaintiff's action? Certainly not. His right

of action upon the contract would still exist. He still would have the right to have determined by the court or a jury whether anything were due him by the contract, and if so, how much. We submit, then, that it can not be pleaded, and is not, in bar of plaintiff's action.

The next point we present is that the new matter set up in defendants' answer is purely equitable in character; matter of which courts of equity alone have jurisdiction, and with which courts of law can not deal; that the answer consists of new matter, which could not, under the common-law system, have been pleaded as a defense to an action at law. From these propositions no one will dissent. Then the question arises, Have the laws of our territory so changed or modified the system as to authorize the pleading in the action at bar? That the supreme and district courts of this territory are clothed with chancery and common-law jurisdiction by the organic act, and that they can not be deprived of these jurisdictions by territorial legislation, is too clear to be questioned. It will not be disputed that, without legislation, these courts would remain independent the one of the other, and be governed by the well-known distinctions under the common-law system. Admit, for the sake of the argument, that the territorial legislature may prescribe the forms of proceedings in actions at law, and in suits in equity, and may even go so far as to provide that matters belonging separately to each jurisdiction may be tried in the same action; yet, until the legislature does act, the jurisdictions are governed by the rules established by the old system. Then the question as to whether the legislature has so changed the rule as to authorize the blending and trial of matters belonging to the separate jurisdictions in the same action becomes more pertinent. We maintain that it has not. California, New York, and other states and territories have done so, but the legislature of our territory, following in their wake, and copying most copiously from the statutes of California and New York, seems most studiously to have avoided doing so, by omitting provisions of the statutes of those states most clearly intended for that purpose.

We call the court's attention to the second clause of section 46 of our practice act: "A statement of any new matter

constituting a defense, or counter-claim, in ordinary and concise language." Now what did the legislature mean by the defense as used in this clause? Constituting a defense to what? We answer, a defense to the action in which it is pleaded. How shall we determine what shall constitute a defense? The legislature has not defined it. We know of no other way of defining the term than to resort to the common law, to those rules which have been in force from time immemorial until the late departure in the way of civil procedure. Now, by the common law the defenses to an action at law are well defined and established, as well as the defenses to a suit in chancery. The distinction is marked. An equitable defense asking affirmative relief in an action at law is unknown to the old system. In construing this statute, we must, then, have recourse to the common law, and in doing so, it seems to us most clear that the legislature meant and intended by the term "new matter constituting a defense" new matter which constituted a defense to the action in which it was pleaded according to the old system. It may be asked, why insert the clause in reference to new matter, if no change in the nature or character of the defense was intended? We answer that under the general issue, according to the old system, the defendant might give in evidence, by way of defense, many things consisting of new matter; for instance, payment, accord and satisfaction, former recovery, a release, etc., in an action of *assumpsit;* but the statute, by the first clause of section 46, has done away with the general issue. It allows nothing but a specific denial. A specific denial puts in issue nothing but the particular allegation denied; and, according to all rule, evidence not pertinent to the issue is excluded. Van Santvoord, in discussing the general denial allowed by the code of New York, says: "The nature and uses of the general denial under the code have been considerably discussed in some of the more recent cases. It had been supposed at one time to be equivalent to the general issue, and that many of the rules applicable to that plea were also applicable to it. But this view has not been sustained, and it may now be regarded as settled that there is no such thing as the common-law general issue under the code, although it is said that the general denial authorized by the code is, in

some respects, like it.  But the points of difference have
been very clearly and distinctly stated, and consist mainly
in this: *that the general issue* admitted a great variety of de-
fenses *which can not now be introduced under a simple general
denial or unless specially pleaded:*" Moak's Van Santvoord,
side page 405 et seq.

It seems to us that in this is found an all-sufficient reason
for inserting the clause in reference to new matter.  Mark
the difference between the language used in the statutes of
the states, the decisions of which are invoked to sustain the
position of defendants, and that of ours.  The second clause
of the forty-sixth section of the California practice act reads:
"A statement of matter in avoidance, a counter-claim con-
stituting a defense, or the subject-matter of cross-complaint
*which may entitle a defendant to relief against the plaintiff,*
alone, or against the plaintiff and a co-defendant."  Under
this statute, the California courts have held that the defend-
ant may set up in his answer, by way of cross-complaint,
new matter demanding equitable relief.  It seems to us that
the California courts may well find the authority to plead
this equitable matter, by way of cross-complaint, from the
language of that portion of the statute which says the de-
fendant may set up in his answer "*the subject-matter of
cross-complaint which may entitle the defendant to relief
against the plaintiff.*"  There can be no question that the
California courts do base their decisions upon this statute,
and it is equally clear that that portion of the California
statute most clearly sustaining those decisions is omitted
from our statute.  Hence we argue that the decisions of the
California courts upon the subject under discussion ought
not to have any considerable weight in construing our stat-
ute or in determining whether a purely equitable defense
can be interposed in an action at law.  By the New York code
it is provided as follows: "The defendant may set forth by
answer as many defenses and counter-claims as he may have,
whether they be such as have been heretofore denominated
*legal or equitable, or both.*"  Now the New York code contains
the exact language contained in the second clause of section
46 of our practice act, but it is immediately followed by
that clause just quoted defining the character of the de-
fenses and counter-claim intended.  But no such definition

has been given in our statute. By the New York statute, the pleading of equitable defenses to an action at law is expressly given, and upon this express authority the courts of that state have held that equitable defenses could be pleaded to an action at law. By equitable defenses we mean new matter of which courts of equity have had exclusive jurisdiction heretofore. Now we submit that the decisions of the state of New York, founded as they are upon the statutes of that state as above quoted, can have no weight or influence in construing our statute or determining the question involved. Now we maintain that the legislature having done away with the general issue, so well defined and understood, it became necessary, in order to preserve those defenses consisting of new matter, which had heretofore been available under the general issue, to provide some means by which the defendant might interpose them. We submit that a fair judicial construction of the statute can but result in the conclusion that, by the new matter constituting a defense, is meant new matter constituting a defense to the action in which it is pleaded, as defined by the common law. By abolishing the general issue under which defenses consisting of new matter could be made available, without some provision for the preservation of these defenses, they would have been lost. We insist that the second clause of section 46 of our practice act was intended alone for the preservation of these defenses, and that a fair construction of this statute can not extend it beyond their special purpose. The majority of the court, in their opinion heretofore filed in this case, quote from 1 Mont. 540, as follows: " That suits in equity, where equitable relief is prayed, *or where an equitable defense is set up to a claim at law,* must be tried as in a court of chancery, and the decree emanate from the judge sitting as a chancellor." And add: " This is precisely what is prayed for by the defendants in this case." It seems to us that the majority of the court overlook the material fact that the territorial legislature in Montana authorized the pleading of matter belonging exclusively to separate jurisdictions in the same action.

If our legislature had so authorized, then the quotation from the decision in Montana would have been appropriate to the case at bar. We again urge that until our legisla-

ture does so authorize, the rule governing the separate jurisdictions must prevail. It may be argued that it is a *counter-claim*, within the meaning of the statute. Van Sant-voord, speaking of the counter-claim of the New York code, which is very similar to that of ours, says: "The exact meaning of the term 'counter-claim,' as used in the code, seems to have baffled judicial ingenuity itself; and some of the judges have not hesitated to acknowledge the fact in no very complimentary terms to the authors of this provision. Judge Barculo thinks it unnecessary to attempt to define the precise meaning of this unfortunate compound which has been pressed by our modern Solons into the service of the fourth, and it is to be hoped the *last*, edition of the code:" See Moak's Van Santvoord, side page 549, note 1. To arrive at anything like a correct definition of this complicated term, we must examine, in connection, the several statutes bearing upon the subject-matter; knowing it to be in derogation of the common-law rules of pleading, we must be careful that our construction does not do violence to long-established rights, if we may avoid it. By our statute the complaint and answer are the only pleadings allowed in forming the issues of fact. The plaintiff is not allowed to reply to new matter set up in the answer. Such new matter is simply considered denied, and on the trial the plaintiff, in his proofs, is confined to that which may be introduced under a simple denial. Now, here are two complete and independent actions, so far as the matter and the manner of pleading are concerned. The one set up in the complaint on the law side of the court, the other set up in the answer on the equity side of the court, each consisting of distinct, independent matter. If the construction of the statute sought by defendants prevails, then to the action at law set up by plaintiff, on the law side of the court, the defendants may plead new matter, of which courts of equity have exclusive jurisdiction; while to the cause of action on the equity side of the court, set up by defendants in their answer, the plaintiff must rely upon a simple denial. It is most palpable, if this construction be given, it will, in many cases, deprive litigants of long-established and well-defined rights. To illustrate: Suppose the defendants, prior to the bringing of this suit by plaintiff, had

brought suit on the equity side of the court for the reformation of the written instrument, alleging the same facts as are set up in the answer in this case; that the case had been tried by a court of competent jurisdiction, and judgment and decree rendered refusing to reform the writing; that afterwards the plaintiff brings this suit upon the writing, and the defendant sets up in his answer the same facts as in his answer in this case. The matter of the reformation of the writing has been once tried. Must it be tried again? If not, how can the plaintiff avail himself of the former judgment and decree? He can not plead it, because he has no right to reply. He can not give it in evidence, because it is not relevant to any issue raised by the pleadings. If the construction sought by defendants' counsel be maintained, we can see no way to avoid a retrial of the matter of reforming the writing in the case supposed; and the plaintiff would be deprived of the benefit of the well-established rule that a matter once tried is forever tried.

We maintain that the term "counter-claim," as used in our statute, was intended to include such matters as could have been formerly pleaded in the particular action, such as set-off, recoupment, and the like. The construction for which we contend will preserve the harmony of our remedial judicial system.

With due deference to the opinion of the court, we insist that the proposition that the answer sets up by any averment a defense at law is erroneous. As the court has said, the matter set up in the answer is a perfect bill in equity, asking for the reformation of the writing set out in the complaint. It is palpable that the pleader had nothing in view but the reformation of the writing. He had no idea when drawing it that it should be used as setting up legal matter which constituted a defense at law, such as the want of consideration. In his prayer he asks for no relief that a court of law could give him, except that he be permitted to go hence with his costs.

The plaintiff in his complaint sets out the writing. The writing declares: "The consideration of this instrument is the execution of the agreement of November 8th of said Houghtaling." This declaration is an averment of the complaint as to the consideration. The defendants in their an-

swer do not deny this averment of consideration. The language of the answer is certainly addressed to a court of equity, and not to a court of law. It seems to us that the court will not hold that the answer contains both a legal and an equitable defense, unless the matter taken as a whole be such as may be pleaded as well to an action at law as to a suit in equity.

The court reaffirmed its former opinion.